No. 98-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 197

295 Mont. 399

984 P.2d 733

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BRENDA KIPP,

Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terryl T. Healy, Attorney at Law; Cut Bank, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Larry D. Epstein, Glacier County Attorney; Cut Bank, Montana

_____

Submitted on Briefs: February 11, 1999

Decided: August 25, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶On August 29, 1996, Brenda Kipp was charged by information filed in the District Court for the Ninth Judicial District in Glacier County with the following offenses: driving a motor vehicle while under the influence of alcohol, a fourth offense, in violation of §§ 61-8-401(1)(a) and -722(4), MCA (1995); failure to give notice of an accident by the quickest means available, in violation of § 61-7-108, MCA (1995); failure to stop and identify herself after striking an unattended vehicle, in violation of § 61-7-106, MCA (1995); driving while her privilege to do so was suspended or revoked, in violation of § 61-5-212(1), MCA (1995); and operating a motor vehicle without liability insurance protection in effect, in violation of § 61-6-304(1), MCA (1995). Kipp filed a motion to quash the use of any evidence of her previous DUI convictions in tribal court and a motion to dismiss the charges based on her belief that the State violated her right to a speedy trial. The District Court denied both motions. Kipp pled guilty to the charges and appealed the District Court's denial of her motion to quash and motion to dismiss. We reverse the judgment of the District Court.
2. ¶The dispositive issue on appeal is:
3. ¶Did the State violate Kipp's right to a speedy trial?

## FACTUAL BACKGROUND

1. ¶On August 20, 1996, a witness called the Glacier County Sheriff's Office to report an automobile accident which occurred on Central Avenue in Cut Bank. Kipp was stopped near the scene and arrested for driving under the influence of alcohol. She was charged by information in District Court on August 27, 1996, and trial was set for February 24, 1997. On January 14, 1997, Kipp filed a motion to quash any reference to her tribal court convictions for driving under the influence of alcohol and filed a second motion to quash on January 29, 1997. The District Court held a hearing on the motions on February 5, 1997. A hearing for supplemental argument and to set a new trial date was held on March 5, 1997. The parties requested that the issue be submitted on briefs, and the District Court set a briefing schedule by which the motion was deemed submitted when Kipp's reply brief was filed on March 14, 1997. The District Court minute record from the March 5 hearing states that after the ruling, "the parties will advise if a new trial date will be required." The District

Court denied the motions on April 18, 1997.

2. ¶On September 4, 1997, the parties appeared in District Court and the State requested that the District Court set a trial date. The order setting trial for October 10, 1997, was mailed to the parties on September 5, 1997, and Kipp filed a motion to dismiss for lack of speedy trial on September 23, 1997. At a hearing the next day, Kipp informed the District Court that she would plead guilty in the event that her motion was denied. The District Court vacated the trial date and stated that it would wait to set a date for the change of plea hearing until after it ruled on the motion. The District Court denied the motion and set a hearing for change of plea for November 19, 1997. Kipp requested a continuance at that hearing and subsequently pled guilty to all charges, subject to reservation of her right to appeal, on December 3, 1997.

## DISCUSSION

1. ¶Did the State violate Kipp's right to a speedy trial?

2. ¶Kipp contends that the District Court incorrectly concluded that the State did not violate her right to a speedy trial. Whether a defendant has been denied a speedy trial is a question of constitutional law. *See City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, ¶ 18, 965 P.2d 866, ¶ 18. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 696.

3. ¶The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution, guarantee a criminal defendant's right to a speedy trial. *See State v. Olmsted*, 1998 MT 301, ¶ 49, 968 P.2d 1154, ¶ 49. In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101, the United States Supreme Court established four factors which must be considered in any review of a claim that a speedy trial was denied: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See Barker*, 407 U.S. at 530, 92 S. Ct. at 292, 33 L. Ed. 2d at 117. Prejudice to the defendant can be established based on any of the following: (1) pretrial incarceration; (2) anxiety and concern to the defendant; or (3) impairment of the defense. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118. In *Bruce*, this Court recently clarified its line of cases which interpret and apply *Barker*.

4. ¶First, we consider the length of delay from the time charges are filed until the defendant's trial date. If the length of delay is 200 days or longer, further speedy

trial analysis is necessary. *See Bruce*, ¶ 55. In this case, the District Court found that there were 389 days of delay from the date the information was filed to the date Kipp's speedy trial motion was denied on November 10, 1997. We look instead to the defendant's trial date or, in this case, to the date of the hearing at which Kipp pled guilty since that was the date of disposition in this case. Kipp was charged by information on August 29, 1996, and pled guilty at the change of plea hearing on November 19, 1997; a delay of 448 days which renders further speedy trial analysis necessary.

5. ¶Second, we consider the reason for the delay. We determine how many days of delay are attributable to the State, and if we conclude that 275 days or more of delay are attributable to the State, the burden will shift to the State to demonstrate that the defendant has not been prejudiced by the delay. *See Bruce*, ¶ 56. When delay is either institutional or caused directly by the prosecution, it is attributable to the State. *See Bruce*, ¶ 61; *State v. Hembd* (1992), 254 Mont. 407, 413, 838 P.2d 412, 416. Moreover, "the [State] bears the burden of prosecution, and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the [State] avoid dismissal for failure to timely prosecute him." *Bruce*, ¶ 63; *see also State v. Tweedy* (1996), 277 Mont. 313, 318-20, 922 P.2d 1134, 1137-38.

6. ¶The original trial date for this case was February 24, 1997. The District Court determined that the time between August 29, 1996, and February 24, 1997, was institutional delay attributable to the State. However, it then attributed to Kipp all of the delay between her January 14, 1997, motion to quash and its April 18, 1997, ruling on that motion. The District Court also characterized the time between April 18 and Kipp's September 24, 1997, motion to dismiss as institutional delay, but concluded that the delay was the result of Kipp's motions and therefore chargeable to her. Accordingly, the District Court attributed 136 days of delay to the State and 253 days to the defendant. We conclude that the District Court erred when it allocated 253 days of delay to Kipp.

7. ¶When a defendant files an "eve of trial" motion, which raises a complex legal issue or requires an evidentiary hearing which thereby makes the original trial date impracticable, the *reasonable* period of delay caused thereby is attributable to the defendant. For example, we have stated that "any delay directly attributable to a motion to dismiss based on denial of speedy trial which is filed less than ten days prior to commencement of trial will be assigned to the defendant." *Bruce*, ¶ 57.

8. ¶Kipp's motion to quash was filed more than a month before her trial and the District Court heard arguments on February 5, 1997, 19 days before the original trial date. The record from that hearing shows that the District Court vacated the trial

date and stated that it would set a new trial date once it had entered its decision on the motion, because the result of the motion "might have an impact on what the parties do if it turned out [the prior DUI convictions] are not going to be considered." The District Court then scheduled a hearing for March 5, 1997, to set a new trial date and to hear supplemental arguments on the motion to quash. At that hearing, the parties requested that the matter be submitted on briefs and the District Court set a briefing schedule.

9. ¶When a trial court, for its own reasons, vacates the trial date and does not set a new date, this delay is not attributable to the defendant. Kipp brought her motion more than a month before the original trial. Had it been responded to in a timely fashion there is no indication in the record why it could not have been decided prior to the February 24, 1997, trial date. It was not her duty to insure that the briefing and argument schedule proceeded in a manner which would insure that she was prosecuted in a timely fashion. Therefore, we conclude that the delay from the motion to quash until the court issued its decision was institutional delay attributable to the State. *See Bruce*, ¶ 61; *Hembd*, 254 Mont. at 413, 838 P.2d at 416.

10. ¶The District Court suggested that it was important to attribute delay from untimely motions to defendants in order to prevent them from timing motions to create speedy trial problems; however, Kipp's motions were not untimely and there is nothing before us to indicate they were timed to cause delay.

11. ¶ Once the District Court entered its decision, no further activity occurred in the case until the State requested a trial date almost five months later. The State has the burden of diligent prosecution at all stages of a case and, therefore, had the burden to ensure that a new trial date was set in this case. *See Bruce*, ¶ 63; *see also Tweedy*, 277 Mont. at 318-20, 922 P.2d at 1137-38. From the date of the District Court's April 18, 1997, order until the November 19, 1997, change of plea hearing date, Kipp filed no motions, asked for no continuances, and did nothing to contribute to further delay. Therefore, the delay from April 18, 1997, until the November 19, 1997, change of plea hearing is institutional delay attributable to the State. *See Bruce*, ¶ 61; *Hembd*, 254 Mont. at 413, 838 P.2d at 416. Kipp requested a continuance at the November 19 hearing until December 3, 1997. Therefore, we conclude that 15 days of delay are attributable to Kipp and 433 days of delay are attributable to the State.

12. ¶Based on our holding that 433 days of delay are attributable to the State, we conclude the burden shifted to the State to prove that Kipp was not prejudiced by the delay.

13. ¶The third *Barker* criteria we consider is whether the defendant has asserted her

speedy trial right. If the right to speedy trial is invoked any time prior to the commencement of trial, this criteria is satisfied. *See Bruce*, ¶ 57. In this case, Kipp filed a motion to dismiss based upon violation of her speedy trial rights on September 23, 1997, 17 days before trial. Accordingly, Kipp asserted her right to a speedy trial in a timely fashion.

14. ¶Finally, we consider prejudice to the defendant. It is the State's burden to demonstrate that Kipp was not prejudiced by (1) pretrial incarceration, (2) anxiety or concern, or (3) impairment of defense. *See Bruce*, ¶ 68.

15. ¶Kipp posted bond shortly after she was charged, and concedes that she was not unduly prejudiced by pretrial incarceration.

16. ¶"Anxiety and concern are an inherent part of being charged with a crime, and . . . [the State's] 'burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety.'" *Bruce*, ¶ 70 (citing *State v. Williams-Rusch* (1996), 279 Mont. 437, 452, 928 P.2d 169, 178). In this case, Kipp contends that she was prejudiced by anxiety and concern because she is the custodial parent of two minor children faced with potential incarceration and because she was denied employment as a result of the charges. The State offers no evidence that Kipp was not prejudiced by anxiety or concern and, therefore, consistent with our presumption, we conclude her anxiety and concern was real.

17. ¶Kipp also asserted that her defense was impaired by the delay in this case because the only eyewitness to the alleged crimes has not been seen since March 1997.

18. ¶The loss of a "main witness" as a result of delay attributable to the State is prejudicial to the defense. *See Bruce*, ¶ 73. The State has failed to rebut the presumption that Kipp's defense was impaired by the delay in her prosecution.

19. ¶As we pointed out in *Bruce*:

A presumption has been defined as an inference as to the existence of one fact from the existence of some other fact founded on logic or on a previous experience of their connection. A true presumption is a rule of law laid down by the courts which attaches to facts certain procedural consequences, such as the shift in the burden of evidence production. . . .

. . . A presumption . . . attaches definitive probative value to certain facts. If the presumption is conclusive, it mandates a particular conclusion; if it is rebuttable, it mandates the conclusion in the absence of contradictory evidence.

22A C.J.S. Criminal Law § 695 (1985).

*Bruce, ¶ 33.*

1. ¶In other words, once the presumption attached, it was not incumbent on the defendant to prove prejudice. It was incumbent on the State to disprove prejudice. Because it did not do so, the presumption of prejudice prevails.
2. ¶ Furthermore, even though the District Court did not have the benefit of the *Bruce* decision at the time of its decision in this case, this Court has long presumed prejudice after the passage of less time than elapsed in this case, as the following discussion from *Bruce* indicates:

We first discussed the effect of presumptive prejudice in *Fitzpatrick [v. Crist* (1974)], 165 Mont. [382] at 388, 528 P.2d [1322] at 1326, where we were concerned with a delay of seven months. There we held that:

We emphasize this delay is not considered a per se violation of petitioner's right to a speedy trial, but under the circumstances here it is thought long enough to shift to the state the burden of explaining the reason for the delay and showing absence of prejudice to petitioner.

In *State v. Steward* (1975), 168 Mont. 385, 389, 543 P.2d 178, 181, we cited with approval *United States v. Rucker* (D.C.Cir.1972), 464 F.2d 823, 825, where that court held that:

A delay of over one year between arrest and trial raises a Sixth Amendment claim of "prima facie merit." *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). It places on the Government the necessity of justification, the burden of which increases with the length of delay. . . . When the delay approaches a year and a half, as in this case, the Government must provide a justification which convincingly outweighs the prejudice which can normally be assumed to have been caused the defendant.

In *State ex rel. Sanford v. District Court* (1976), 170 Mont. 196, 199, 551 P.2d 1005, 1007, we held that a ten-month delay between arraignment and trial established a *prima facie* case of denial of the right to a speedy trial.

In [*State v.*] *Fife*, 193 Mont. [486] at 491, 632 P.2d [712] at 715, we cited *Moore v. Arizona* (1973), 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183, 185, for the principle that "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial."

In *State v. Britton* (1984), 213 Mont. 155, 689 P.2d 1256, we had the following to say about the presumption of prejudice from a delay which was less than the delay in this case:

Here it was the State's burden to rebut the presumption of prejudice caused by the 396-day delay. The State has not sufficiently done so, and we therefore conclude the delay has resulted in prejudice to the defendant . . . . [I]t is nonetheless clear defendant had no duty to prosecute himself and the State had the burden to proceed in a manner that would protect his constitutional right to a speedy trial. The State did not do so, and the delay continued with the State giving no constitutionally acceptable explanation for the substantial delay.

*Britton, 213 Mont. at 162-63, 689 P.2d at 1261.*

In *State v. Waters* (1987), 228 Mont. 490, 743 P.2d 617, we explained the effect of "presumptive prejudice" as follows:

The delay in the instant case gives rise to a rebuttable presumption of prejudice. In order to rebut the presumption, the State must come forward with evidence showing that the

defendant was not prejudiced by the delay and that there is a reasonable excuse.

*Waters, 228 Mont. at 493, 743 P.2d at 619 (citing State v. Ackley (1982), 201 Mont. 252, 256, 653 P.2d 851, 853).*

We have followed the rule that a delay less than that found in this case gives rise to a presumption of prejudice which must be rebutted by direct evidence produced by the State in *State v. Matthews* (1995), 271 Mont. 24, 28, 894 P.2d 285, 287, *State v. Heffernan* (1991), 248 Mont. 67, 71, 809 P.2d 566, 568, *State v. Curtis* (1990), 241 Mont. 288, 299, 787 P.2d 306, 313, *State v. Wombolt* (1988), 231 Mont. 400, 403, 753 P.2d 330, 331, *State v. Haskins* (1986), 220 Mont. 199, 202, 714 P.2d 119, 121, *State v. Cutner* (1984), 214 Mont. 189, 192, 692 P.2d 466, 467, *State v. Chavez* (1984), 213 Mont. 434, 443, 691 P.2d 1365, 1370, *State v. Tiedemann* (1978), 178 Mont. 394, 399, 584 P.2d 1284, 1288, and *State v. Cassidy* (1978), 176 Mont. 385, 390, 578 P.2d 735, 738. We have also recently applied the rule in *State v. Tweedy* (1996), 277 Mont. 313, 320, 922 P.2d 1134, 1138, where the delay was greater than the delay in this case.

*Bruce, ¶ 25-31.*

1. ¶We pointed out in *Bruce* that only in several recent cases had the Court declined to strictly enforce the presumption of prejudice. However, even those cases paid lip service to the principle. *Bruce*, ¶ 32.

2. ¶In fact, the District Court recognized the State had the burden to disprove prejudice and acknowledged as much in its order denying Kipp's motion to dismiss where it stated that:

[I]n this case 389 days have passed. This delay is long enough to trigger further inquiry of the remaining *Barker* factors and creates a rebuttable presumption of prejudice. The State has the burden of rebutting the presumption by providing a reasonable explanation for the delay and showing that the defendant was not prejudiced. *State v. Heffernan* (Mont. 1991), 809 P.2d 566.

1. ¶Kipp's motion was denied, however, based on the District Court's conclusion that Kipp was responsible for the majority of delay. In that regard, the District Court held:

The court holds that the defendant's right to a speedy trial was not violated because defendant's own actions caused much of the delay and the prejudice alleged to result from that delay.

1. ¶We conclude that the State violated Kipp's right to a speedy trial. Therefore her conviction is reversed and the charges against her are dismissed.
2. ¶Based on this result, the other issues raised by Kipp's appeal need not be addressed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ WM. NELS SWANDAL

District Judge, sitting for Justice William E. Hunt, Sr.

/S/ MIKE SALVAGNI

District Judge, sitting for Justice James C. Nelson